# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-408 |
| JEFFREY WORRILOW JR. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Jeffrey Worrilow Jr., a second time child exploitation offender, stands before this court awaiting sentencing on two counts of accessing with intent to view child pornography. As a repeat offender, his crimes are egregious.  For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration of 120 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case and of the Section 3553(a) factors.

## I.      BACKGROUND

On September 11, 2025, a grand jury sitting in the Eastern District of Pennsylvania returned a two-count indictment charging, Jeffrey Worrilow Jr., with access with intent to view child pornography in violation of 18 U.S.C. §2252(a)(4)(B) and (b)(2). On March 5, 2026, the defendant appeared before this Court and entered pleas of guilty to Count One and Count Two pursuant to a written plea agreement.

## II. FACTUAL BACKGROUND[2]

The FBI in an undercover operation took control of a website on the dark web providing child pornography. The website required users to create and register at least one account to access child pornography. Prior to registering an account, the user had to traverse a webpage which advised that the website was dedicated to child pornography.  The website was shut down

---

2 The factual background can also be found in the PSR ¶¶12-26.

in September 2024, and the FBI maintained a presence on the webpage to identify users participating in the online illegal trade of child exploitation images.

Worrilow, Jr. was identified as a member of the target website for more than a year, and investigators confirmed that during that time he maintained two different accounts on the website which he used to access the site 27 times and post at least twice, including commenting on images of child pornography posted by another user.

On one occasion when he accessed the website, June 8, 2024, the FBI captured the IP address which was used to log in. Subscriber information led to the defendant's home. A federal search warrant was sought and granted. The search warrant was executed on March 27, 2025, at 4:13 p.m.  Jeffrey Worrilow Jr. was at home during the execution of the search warrant. Several devices were seized pursuant to search warrant. Of the devices seized evidence of child pornography was found on two devices: (1) the desktop computer found in the defendant's bedroom, and (2) the iPhone 14 Pro Max cell phone taken from the defendant's front pants pocket.

### Child Pornography Crimes on the desktop computer (Count One)

Found on the desktop computer seized from the defendant's bedroom was one video of child pornography located in the temp folder cache under the Windows user account "JAWOR." The video had a creation date of March 8, 2025, at 3:50pm and was last accessed one second later, at 3:51 pm. The video was approximately 23 seconds long and depicted a minor prepubescent girl, standing in front of the camera, initially clothed, and then removed her clothing to expose her naked body to include her breasts and vagina, and then leaned in and appeared to stop the video recording. The media player on the desktop was used to access the

video and play at time of the creation date of the cached video. The TOR[3] browser was used around the same time as the file creation indicating that the user likely used Tor to access the dark web to access the file when the cache video file was created on the desktop. This computer was recovered from the defendant's bedroom and his personal information such as date of birth and phone number were "auto entered" on web browsers.

### Child Pornography Crimes on the phone (Count Two)

There were TOR Browsers which are typically used to connect to the dark web on the phone. TOR Browser history showed the device visited websites known to contain child pornography.

A total of 648 images and 14 videos of child pornography were found in the cache of the phone. Cache images are forensic evidence that images were viewed or present previously on the phone but the images in the cache are no longer accessible by the user of the phone.

An additional 17 images of child pornography were found in the onion browser[4]. These images depict minor boys and girls with lascivious exhibition of their genitals and anuses.  These images included prepubescent children as well. 10 of the images from the onion browser had the creation date of March 26, 2025, from 9:27pmthrough 9:35pm, meaning that the user of the phone accessed the child pornography images from the onion browser on that date between those times, and the forensic artifacts were stored on the phone proving that the images were accessed. One image of note was the header picture from the "NTL: New Topic Links" website, which depicted a minor girl with a penis inserted into her mouth holding a pink piece of paper with "I

---

3 The Tor network is a free and open-source network that enables anonymous communication.
4 The onion browser is browser for iOS that uses the TOR network.

(heart symbol) Cum" written on it, showing this site was visited and viewed from this phone on March 26, 2025.

Also found in the onion browser were an additional 14 videos, each approximately 10 seconds long, and all depicting child pornography, that is, minor boys and girls engaged in sexually explicit conduct, to include masturbation, genital to genital/genital to anal contact, oral sex, and the lascivious exhibition of the genitals. These images and videos included prepubescent minors as well. Both the 10 images and the 14 videos from the onion browser are included as part of Count Two in the indictment charging access with intent to view child pornography.

Application activity linking the defendant to the phone shows the onion browser was in use on March 26, 2025, during the time when these child pornography files were created. Most significantly, the password for more than 60 online accounts found on the defendant's phone matched the password used to access the target website above (Flyers28eagles), linking the defendant to the original child pornography activity as well as the child pornography crimes on the phone. In addition to phone being recovered from the defendant's person, this phone contained several selfie photos of Worrilow Jr., photos of a car that is registered to the defendant, photos of prescription bottles in the name Jeffrey Worrilow Jr., photos of a PA Driver's License and credit card with the defendant's name, and bank accounts with the available balance in the name of Jeffrey Worrilow Jr.

## III.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentences

**Access with Intent to View Child Pornography, 18 U.S.C. § 2252(a)(4)(B), (b)(2)**

For each count the statutory maximum sentence is elevated based on his prior conviction for a child exploitation offense, and calls for a statutory maximum of 20 years' incarceration, a

10-year mandatory minimum, a minimum 5-year term up to a lifetime of supervised release, a $250,000 fine, mandatory restitution pursuant to 18 U.S.C. § 2259 of at least $3,000 per child victim, forfeiture, a $100 special assessment, and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and an additional assessment of up to $17,000 pursuant to 18 U.S.C. § 2259A.

**Total Maximum Sentence**: 40 years' incarceration, a 10-year mandatory minimum term, a minimum 5-year term up to a lifetime of supervised release, a $500,000 fine, mandatory restitution of at least $3,000 per victim, forfeiture, a $200 special assessment, and if found to be non-indigent, an additional mandatory $10,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and an additional assessment of up to $34,000 pursuant to 18 U.S.C. § 2259A.

### B.    Effect of Revocation of Supervised Release

Supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to two years on each of Counts One and Two. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release

### C.    Sexual Offender Registration Requirements

Upon conviction, the Sex Offender Registration and Notification Act ("SORNA"), which is a federal law, requires the defendant to register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. He must update his registrations not later than three business days after any change of name, residence,

employment, or student status. In addition, failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

### D.     Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| Group One (Counts One and Two) | Base Offense Level, USSG §2G2.2(a) | 18 |
|---|---|---|
| | Possessed images of prepubescent minors/ minors under 12 §2G2.2(b)(2) | +2 |
| | Possessed images that involved sadistic or masochistic conduct and infants/ toddlers §2G2.2(b)(4)(A) and (B) | +4 |
| | Use of a computer §2G2.2(b)(6) | +2 |
| | Images in excess of 600 §2G2.2(b)(7)(D) | +5 |
| Offense level | | 31 |
| | Acceptance of responsibility and timely notification | -3 |
| **Final Offense Level** | | **28** |
| Criminal history category | 0 criminal history points | Category I |
| **Final Guideline Range** | | 78-97 months, which is elevated to 120-months based on the mandatory minimum |

## IV.     SENTENCING ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

*Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As detailed below, the Government believes that a consideration of the advisory Guidelines range and the Section 3553(a) factors support a sentence of 120 months imprisonment. The Government further recommends that the Court impose a term of supervised release of 10 years, a fine, if any, to be determined by the Court, mandatory restitution, and forfeiture of the property used to facilitate the defendant's crime.

## Consideration of the 3553(a) Factors Regarding Imprisonment

### A. The Nature and circumstances of the offenses

The defendant engaged in serious offenses. As a convicted child sex offender, he used the dark web to access, view, and download hundreds of images of child pornography. Each image and video he gratified himself to was created from the horrific and violent rape and abuse of young children to provide pornography for people like the defendant. By contributing to and sharing in the world of child pornography trading, he and others like him perpetuate the harm to the child victims depicted in these images by creating demand and fueling this market, which leads to more sexual abuse of children and further production of images. Given the scope of the internet, the exploitation is ongoing and relentless. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008).

Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003)*. Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *See H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers," which results in a robust and growing market for child pornography and increased abuse of innocent children. *See Child Pornography Prevention Act of 1996*, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note;

*United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

Each view, download, and distribution of child pornography re-victimizes the children who were abused to create that particular piece of child pornography. In *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006), the Third Circuit upheld the defendant's admittedly "harsh" sentence for distributing and possessing child pornography based, in large part, on the extreme harm to the children who are victims of sexual abuse because "'where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.' Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.' … Furthermore, 'it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." (Internal citations omitted.)

Here, the images possessed by the defendant contained particularly horrific depictions of child sexual abuse, in that they involved sadomasochism and violence, including toddlers who were sexually abused. PSR¶38. Attached to this memorandum are letters from child victims whose sexual abuse was recorded, and those recordings downloaded and possessed by the defendant. *See* Exhibit A -Victim Impact Statements (filed separately under seal). These letters

describe the life-long pain and suffering that they endure because of the continued distribution and viewing of the recorded images of their abuse. The victims' words—and the words of their families—detail the horrific trauma that they experience every time people like the defendant download, view and collect their images. There can be no doubt that the defendant's crime is serious and warrants significant punishment.

> *"I don't remember everything that happened to me. But I do know I was molested by a lot of men for three years and there are images of it on the internet. I am scared of that because I look similar to when that happened so it would not be hard to put my face together with those images.*
> *The ongoing harm of what happened to me impacts me every single day. I cry multiple times a day and it's exhausting. I feel like everything in life is pointless. I am just existing.*
> *I have horrible insomnia and anxiety. My mind goes blank a lot of the day. I often sit and stare and I can't hear anything. I am easily angered and certain sounds like voices, doors slamming, wind blowing, and hairdryers, and certain smells really bother me. I am overwhelmed with emotion, anger and sadness, every day. I have a constant fear of disappointing people or thinking they are angry with me. I will do anything and everything for validation from everyone in my life. I know this comes from what happened to me. I feel like there are so many things wrong with me and I know it comes from this on-going nightmare.*
> *I can't trust anyone because of all this. I can't open up to people, and I can never tell anyone anything. I am afraid people will think I am crazy. I don't feel close to anybody. I don't think I'll be able to get married because of all this. I don't like men. I never want semen inside of me, so I guess that means I won't have children.*
> *I am angry that the images are out there and can't be taken down. I feel like the images will always be out there. I think I am too broken to be fixed."*

*See* Exhibit A Victim Impact statement from child victim Ali of Zoo Family

### B. **The history and characteristics of the defendant**

This is not this defendant's first offense. In 2008 at the age of 26 the defendant was convicted in Delaware County for the same crimes - online child pornography offenses.  He was sentenced to eleven and a half to 23 months of imprisonment. He was allowed to serve the

imprisonment over 24 weekends, which was then followed by 297 days of electronic monitoring. *See* PSR ¶ 50.

The defendant is again before a court to answer for online child pornography offenses. Despite receiving leniency on his first offense, he continued to reoffend. In this instant case he accessed significantly more images and used dark web websites to access the illegal child sexual abuse material. His criminal behavior has escalated and warrants significant punishment.

### C. <u>The seriousness of the offense, respect for the law, and just punishment</u>

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). This defendant's crimes are among the most serious. He sought, received, downloaded, and possessed hundreds of images of child pornography. He is a repeat offender and has earned a significant term of imprisonment.

### D. <u>Deterrence</u>

Deterrence is also one of the factors that calls for a significant sentence. The defendant himself needs to be deterred from sexually exploiting children in the future, which can be accomplished through the recommended term of incarceration and by the strict conditions mandated by the supervised release term required for his child sex crimes. The recommended sentence comports with sentences imposed for similar crimes in this district and around the country. Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual abuse and exploitation of children has serious and significant consequences. A term of incarceration called for by the Guidelines in this case, 120 months' imprisonment, will serve as a

deterrent to those who may contemplate the consequences of sexually abusing or exploiting a child.

### E.    Other considerations

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). The defendant requires mental health treatment and sex offender treatment, and he should be encouraged to take advantage of the services available through the Bureau of Prisons. Every BOP facility provides some level of mental health treatment, and for sex offenders, there is specialized treatment at BOP facilities, including the Sexual Offender Management Program ("SOMP") which is staffed by highly trained psychiatric professionals. If the defendant truly desires mental health treatment, he can avail himself of such treatment during his imprisonment and after his release, while under his term of supervised release.

### F.    Restitution

A number of the child victims in the defendant's collection have requested restitution, and the Government has provided supporting documentation for the requests to defense counsel. The parties will advise the Court should an agreement be reached prior to the sentencing hearing.

### G. Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length

of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least 10 years is warranted. As explained above, the defendant is a repeat offender who had hundreds of images of child pornography. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as the additional conditions included in Appendix A of the PSR.

- 14 -

## IV.    CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government requests a sentence of 120 months of imprisonment, to be followed by at least 10 years' of supervised release.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Brittany Jones*
Brittany Jones
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


Brian M.  Fishman, Esquire
Counsel for defendant



*/s Brittany Jones*
Brittany Jones
Assistant United States Attorney



DATED:  July 8, 2026.